## CONFIDENTIAL SETTLEMENT AGREEMENT
## AND MUTUAL GENERAL RELEASE

**KING OF DIAMONDS MIAMI LLC** including all of its officers, directors, representatives, shareholders, owners, agents, employees, successors and assigns, **MOVEMENT EVENTS LLC** including all of its officers, directors, representatives, shareholders, owners, agents, employees, successors and assigns **JEFFREY VASILAS**, including his heirs, representatives, attorneys, successors, and assigns,(collectively referred to as "Defendants"), **LUIS ENRIQUE CAMACHO HOPKINS**, including his heirs, representatives, attorneys, successors, and assigns, **MISAEL RIGOBERTO MENOCAL CACERES**, including his heirs, representatives, attorneys, successors, and assigns, **JONNATAN TREVINO HERNANDEZ**, including his heirs, representatives, attorneys, successors, and assigns, **FRANCISCO J. ROBLETO**, including his heirs, representatives, attorneys, successors, and assigns, (hereinafter referred to as "Plaintiffs") for good and valuable consideration, receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully and completely all matters or disputes that now exist or may exist between them, agree as follows:

1. **Mutual General Release.** In consideration for the promises contained in this Confidential Settlement Agreement and Mutual General Release (the "Agreement"), the parties unconditionally release and discharge each other and each of their successors, assigns, agents, shareholders, owners, managers, officers, and directors (collectively referred to as the "Released Parties") from any and all claims, demands, liabilities, and causes of action of any kind or nature, whether known or unknown, or suspected or unsuspected, which the released parties now own or hold, or have owned or held against the Released Parties, including, but not limited to, any and all claims, demands, liabilities, or causes of action which arise out of, or are in any way connected with, Plaintiffs' alleged employment with, or the separation of their alleged employment with the Defendants, or which arise out of or are in any way connected with any loss, damage, or injury whatsoever to the Released Parties resulting from any act or omission by or on the part of the Released Parties committed prior to the date of this Agreement.

Included in the claims, demands, liabilities, and causes of action being released and discharged by Plaintiffs are all claims under Title VII of the 1964 Civil Rights Act; the Civil Rights Act of 1991; the Age Discrimination in Employment Act; the Older Workers Benefit Protection Act; the Equal Pay Act; the Fair Labor Standards Act ("FLSA"); the Employee Retirement Income Security Act (ERISA); the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973; the Family and Medical Leave Act of 1993; 42 U.S.C. §§ 1981, 1985(3), and 1986; the Occupational Safety and Health Act; Chapter 760, Florida Statutes; the Florida Private Whistle-blower's Act of 1991; Chapter 11A of the Miami-Dade County Code; and any and all other laws, statutes, ordinances, treaties, rules or regulations of the United States of America, or any other country, state, county, municipality, or political subdivision thereof.

Each party understands that this means that the parties releasing each other, and may not bring claims against each other under, *inter alia*,

_____  _____  _____  _____                                    _____
LECH    MRMC    JTH     FJR                                         JF

- Any and all other laws, statutes, ordinances, treaties, rules or regulations of the United States of America, or any other country, state, county, municipality, or political subdivision thereof;
- Any claims arising under any other federal, state or local statute or act, ordinance, regulation, custom, rule or policy;
- Claims for breach of a contract, implied contract, or *quantum meruit*, or any cause of action or claim for tort damages, negligence or personal injury by, between, or among the Parties;
- Claims under any instruments, agreements, or documents entered into by, between, or among the Parties; and
- all claims, demands, liabilities, and causes of action of any kind or nature, whether known or unknown, or suspected or unsuspected, which either party now owns or holds, or has owned or held against the other, including, but not limited to, any and all claims, demands, liabilities, causes of action, and all incurred attorney's fees and costs, which arise out of, or are in any way connected with Plaintiffs' alleged employment with, or the separation of Plaintiffs' alleged employment with the Defendants, or which arise out of or are in any way connected with any loss, damage, or injury, whatsoever to the Release Parties resulting from any act or omission by or on the part of the Released Parties committed prior to the date of this Agreement.

In consideration for the mutual promises exchanged herein, Plaintiffs and Defendants release and forever discharge each other from any and all claims of any kind which Plaintiffs and Defendants had, now have, or hereinafter can, shall or may have against the other party, whether known or unknown to them, by reason of any acts, omissions, events, matters, causes, facts or things occurring or existing prior to the date this Agreement is fully executed and unconditionally delivered by the Parties.

This Release includes all claims which were, or could have been, asserted in the lawsuit styled <u>LUIS ENRIQUE CAMACHO HOPKINS, MISAEL RIGOBERTO MENOCAL CACERES, JONNATAN TREVINO HERNANDEZ AND FRANCISCO J. ROBLETO and all others similarly situated vs. KING OF DIAMONDS MIAMI LLC A/K/A CLUB KOD, MOVEMENT EVENTS LLC, JEFFREY VASILAS AND ELLIOT KUNSTLINGER,</u> Case No.: 17-20415-CIV-WILLIAMS/SIMONTON pending before the U.S. District Court for the Southern District of Florida.

2. **Settlement Amount, Attorney's Fees and Costs**. In consideration of the mutual promises exchanged herein, the Parties agree to settle Plaintiffs' claims for a total of Fifteen Thousand Dollars and no Cents ($15,000.00) to be paid by Defendants, King of Diamonds Miami LLC, Movement Events LLC, and Jeffrey Vasilas, jointly and severally, to the J.H. Zidell P.A. Client Trust Account in three equal installment payments and shall be delivered to J.H. Zidell, P.A., 300 71st Street, Suite 605, Miami Beach, FL 33141.

i. The first installment payment shall be in the amount of Five Thousand Dollars and No Cents ($5,000.00) to be paid on or before February 15, 2018;

_____  _____  _____  _____                                               _____
LECH              MRMC             JTH                FJR                                                                              JF

  ii. The second installment payment shall be in the amount of Five Thousand Dollars and No Cents ($5,000.00) to be paid on or before March 15, 2018; and

  ii. The third installment payment shall be in the amount of Five Thousand Dollars and No Cents ($5,000.00) to be paid on or before April 15, 2018.

 Out of the settlement proceeds:

 Plaintiff Luis Enrique Camacho Hopkins will receive a total of One Thousand One Hundred Dollars and No Cents ($1,100.00) for which Five Hundred and Fifty Dollars and No Cents ($550.00) will be allocated for back wages and Five Hundred and Fifty Dollars and No Cents ($550.00) allocated as liquidated damages;

 Plaintiff Misael Rigoberto Menocal Caceres will receive a total of One Thousand One Hundred Dollars and No Cents ($1,100.00) for which Five Hundred and Fifty Dollars and No Cents ($550.00) will be allocated for back wages and Five Hundred and Fifty Dollars and No Cents ($550.00) allocated as liquidated damages

 Plaintiff Jonnatan Trevino Hernandez will receive a total of One Thousand One Hundred Dollars and No Cents ($1,100.00) for which Five Hundred and Fifty Dollars and No Cents ($550.00) will be allocated for back wages and Five Hundred and Fifty Dollars and No Cents ($550.00) allocated as liquidated damages;

 Plaintiff Francisco J. Robleto will receive a total of One Thousand One Hundred Dollars and No Cents ($1,100.00) for which Five Hundred and Fifty Dollars and No Cents ($550.00) will be allocated for back wages and Five Hundred and Fifty Dollars and No Cents ($550.00) allocated as liquidated damages; and

 Plaintiffs' counsel will receive the total amount of Ten Thousand Six Hundred Dollars and No Cents ($10,600.00) of which Eight Thousand Three Hundred Twenty-Seven Dollars and 25/100 Cents ($8,327.25) represents attorneys' fees and Two Thousand Two Hundred Seventy-Two Dollars and 75/100 Cents ($2,272.75) represents costs in this litigation.

 Plaintiffs shall each receive their full amount from the First Installment payment. The Parties agree that each party shall bear its own attorneys' fees and costs except as otherwise stated in this Agreement.

  3. **Default Provision**: Should Defendants, jointly and severally, fail to make payments of the settlement funds or if the checks are returned for insufficient funds pursuant to paragraph 2 of this agreement or for any other reason, Plaintiffs' counsel shall give written notice via Email to Randall Leshin, Esq. at rleshin@leshinlawfirm.com.

 In the event that Defendants, jointly and severally, fail to cure said breach within three (3) business days of receiving the written notification via e-mail, then a final default judgment shall be entered against Defendants, jointly and severally, for the amount of Twenty Thousand

LECH MRMC JTH FJR       JF

Dollars and No Cents ($20,000.00), less payments made. No additional notification will be required in the event Defendants, jointly and severally, fail to cure said breach within three (3) business days of receiving the written notification via email and Plaintiffs shall immediately proceed with a final default judgment pursuant to the Rules and procedural requirements governing said motions.

The Parties agree and stipulate that this "Payment Default" provision is **not** a penalty provision of any sort but is rather included to insure full and timely payment of the Settlement Funds. The Parties further stipulate and agree that this "Payment Default" provision is a material part of this Settlement Agreement and was bargained for as valuable consideration in order for the Parties to have reached a settlement of the Litigation. It is agreed and stipulated by the Parties that the amounts included in this "Payment Default" provision are the best forecast that can be used for the damages that the Plaintiff will suffer should the Defendants, jointly and severally, fail to make timely and complete payment of the Settlement Funds because the precise measure of what said damages would amount to in the event of default/breach are inascertainable at the time this Settlement Agreement has been executed by both Parties. If breach/default occurs, Plaintiff's counsel shall be entitled to attorney's fees and costs incurred related to the same and for collection.

4. **Indemnification**. Plaintiffs acknowledge and agree that it shall be solely and exclusively each Plaintiff's obligation and responsibility to report to the appropriate governmental agencies and other authorities all monies received under this Agreement and to report and pay all related taxes or impositions. Each Plaintiff shall indemnify and hold harmless Defendants, their directors, officers, subsidiaries and affiliates from and against any and all claims, damages, losses, liabilities or obligations asserted, or imposed and/or threatened against Defendants by any person or entity relating, directly or indirectly, to the monies received by Plaintiffs hereunder, including, without limitation, Plaintiffs, the IRS, or any other person.

5. **Mutual Covenant of Confidentiality**. By receipt of the Settlement Amount set forth above, the Parties expressly agree that the terms of this settlement (including but not limited to the amount of consideration paid hereunder) will not be discussed either directly or indirectly with any other persons, including but not limited to present or former employees or persons working for any of the Defendants, with the exception of: (1) this agreement may be used as evidence in any action relating to a breach of this agreement; (2) for enforcement of this agreement; (3) the Parties respective counsel; (4) the Parties respective Accountant(s); (5) for reporting to Taxing authorities; (6) the Parties' respective spouse(s); (7) or when otherwise required by law.

Should the Court strike the "Confidentiality" provision *sua sponte* for public policy reasons or any other reason, the Agreement is still binding and only the offending section shall be stricken.

This "Confidentiality" provision does not prohibit the Settlement Agreement from being attached as an Exhibit and filed along with the Joint Motion for Approval on CM/ECF and, in fact, the Parties have agreed that the Settlement Agreement shall be filed as an Exhibit on

LECH   MRMC   JTH   FJR                                                                JF

CM/ECF along with the Joint Motion for Approval. The Settlement Agreement shall not be filed under seal and/or for *in camera* review and nothing in this Settlement Agreement and/or "Confidentiality" provision should be interpreted as such.

6. **No Re-Hire:** Each Plaintiff hereby agrees and recognizes: (a) that Plaintiff's alleged employment with Defendants has ended and Plaintiff will not apply for or otherwise seek employment with Defendants or their divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners and successors; and (b) that Defendants have no obligation to employ, hire, reinstate or otherwise engage Plaintiffs in the future. Each Plaintiff further agrees and recognizes that if Plaintiff applies and/or is hired by Defendants or its affiliated entities in the future, this Agreement is sufficient and appropriate legal grounds for denying employment and/or terminating Plaintiff's employment regardless of whether the entity is specifically mentioned herein. The Parties further agree that any future acts by Defendants in denying Plaintiff employment, shall not be construed as retaliation pursuant to 29 U.S.C. 215(a)(3).

7. **Non-Admission Clause.** By entering into this Agreement, Defendants do not admit any liability whatsoever to Plaintiffs or to any other person arising out of any claims asserted, or that could have been asserted in any claim under the FLSA, and expressly deny any and all such liability.

8. **Mutual Non Disparaging Remarks**. The Parties agree that they will not disparage each other, by written or oral word, gesture, or any other means, nor will they make any disparaging or negative comments about each other, to any person or entity. In the event that a prospective employer requests an employment reference for Plaintiff, the parties agree that Defendants will only provide the type of work performed and/or rates of pay, and will not make any reference to this lawsuit or Plaintiffs' claims for overtime wages, minimum wages, breach of contract or unjust enrichment.

9. **Successors and Assigns**. This Agreement shall be binding upon the parties hereto and upon their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors and assigns, and shall inure to the benefit of said parties and each of them and to their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors and assigns. Each Party expressly warrants that he/it has not transferred to any person or entity any rights or causes of action, or claims released by this Agreement.

10. **Jurisdiction.** The parties agree that jurisdiction over this matter shall be in the United States District Court for the Southern District of Florida which is presiding over the Litigation. The Agreement is governed by the substantive law of the State of Florida, and where applicable, federal law. If the district court chooses not to retain jurisdiction, then this Agreement shall be enforceable in the appropriate court in Miami-Dade County, Florida

11. **Mutual Representation by the Parties.** The Parties represent that, as of the date that this Agreement is executed, they are not aware of any additional claims that they may have against any of the Released Parties and hereby the Parties certify that they have not filed any

LECH   MRMC   JTH   FJR                                        JF

claim (except the Litigation released herein), and do not intend to file any claims, demands, liabilities, and causes of action against any of the Released Parties for actions that occurred prior to the date of this Agreement, related to their employment, and/or involving Plaintiff's employment, other than claims to enforce this Agreement.

12. **No Pending Actions And Covenant Not To Sue**. With the exception of the Lawsuit referenced above, each Party represents that he/it has not filed any complaint, claims or actions against the other Party with any state, federal or local agency or court, and that he/it will not do so at any time hereafter. Except that this provision is not intended to apply to any action brought solely under the ADEA for claims arising from conduct after the date on which Plaintiffs execute this Agreement.

13. **Review and Revocation Periods:** Plaintiffs Luis Enrique Camacho Hopkins and Francisco Robleto agree and understand that:

   a. Plaintiff has up to twenty-one (21) days from the date of receipt of this agreement to consider it, but no more than twenty-eight (28) days from said receipt to accept its terms by signing and delivering it to:

   Randall L. Leshin, Esq.
   The Leshin Law Firm
   1975 East Sunrise Blvd., Suite 504
   Fort Lauderdale, FL 33304

   b. After the date of execution, Plaintiff acknowledges that he has an additional seven (7) days in which to revoke his acceptance. To revoke, Plaintiff must deliver to Randall L. Leshin, Esq. a written statement of revocation prior to 5:00 p.m. on the seventh day following his execution of this Agreement. If Plaintiff does not revoke the Agreement, the eighth day after the date of Plaintiff's acceptance will be the effective date of the Agreement. If Plaintiff revokes his acceptance of this Agreement within the seven-day period specified above, this Agreement shall be null and void as to the release of the ADEA claim and said Plaintiff shall only be entitled to half his portion of the settlement agreement. Plaintiff further acknowledges, represents and agrees that if he executes the Agreement prior to the expiration of the twenty-one (21) day period, the decision to do so was his own, and that as a result, he has voluntarily waived the remaining portion of the twenty-one (21) day review period.

   c. Plaintiff is advised, pursuant to the Older Workers Benefit Protection Act ("OWBPA"), that by signing this Agreement he is specifically waiving any claims he might have which have accrued prior to the execution date of the Agreement under the ADEA. Plaintiff acknowledges, represents and agrees that this Agreement shall result in a waiver and release of any rights he has under the ADEA, and acknowledges, represents and agrees

LECH   MRMC   JTH   FJR                                                JF

that he understands his rights under the OWBPA, including but not limited to his right to consider this Agreement for a period of twenty-one (21) days after his receipt of the Agreement and his right to a seven (7) day revocation period after the Agreement has been executed. Plaintiff, by releasing any such claims under the ADEA, in addition to the other claims set forth in this Agreement, acknowledges that he so releases and waives these claims in exchange for the valuable consideration set forth herein.

d.  Plaintiff understands that rights or claims under the ADEA that may arise after the date this Agreement is signed are not waived.

14. **Agreement Not to Be Used as Evidence**. Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement may be deemed to be, or may be used as, an admission of, or evidence of the validity of any released claim, or of any wrongdoing in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce this Agreement. Defendants, however, may file this Agreement in any action that may be brought against it in order to support a defense or counterclaim based on principals of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim. Further, this Agreement shall be filed on CM/ECF along with the Parties' Joint Motion for Approval and dismissal of this Litigation with prejudice.

15. **Dismissal**: Within 7 calendar days of Plaintiffs signing of this agreement, the parties will caused to be filed in the Federal cause of action a joint motion for approval of the parties' settlement agreement and dismissal with prejudice with the court to retain jurisdiction to enforce the terms of this agreement. Within the same time period, Plaintiffs will cause a stipulation of dismissal with prejudice to be filed as to Defendant Elliot Kunstlinger with each side to bear their own attorneys fees and costs. Dismissal with prejudice of the claims against Elliot Kunstlinger with each side to bear their own attorneys fees and costs is a material term to this agreement.

16. **Severability**. In the event that one or more terms or provisions of this Agreement are found to be invalid or unenforceable for any reason or to any extent, each remaining term and provision shall continue to be valid and effective and shall be enforceable to the fullest extent permitted by law.

17. **Entire Agreement**. This Agreement constitutes the complete understanding of the parties hereto and supersedes any and all prior agreements, promises, representations, or inducements, whether oral or written, concerning its subject matter. No promises or agreements made subsequent to the execution of this Agreement by these parties shall be binding unless reduced to writing and signed by an authorized representative of each party.

18. **Enforcement**. It is further understood and agreed that if, at any time, a proven violation of any term of this Agreement is asserted by any party hereto, that party shall have the

LECH   MRMC   JTH   FJR                                    JF

right to seek specific performance of that term and/or any other necessary and proper relief, including but not limited to damages, from any court of competent jurisdiction, and the prevailing party shall be entitled to recover its reasonable costs and attorney's fees. In the event any action is commenced to enforce said settlement agreement or for a proven breach of this Agreement, the prevailing party shall be entitled to reasonable fees and costs.

19. **Voluntariness**. The Parties certify that they have fully read, negotiated, and completely understand the provisions of this Agreement, that each Party has been advised by the other to consult with an attorney before signing the Agreement, and that each Party is signing freely and voluntarily, and without duress, coercion, or undue influence. The Parties each acknowledge that he/it are entering into this Agreement freely and voluntarily and with complete understanding of all the rights he/it is waiving in this Agreement and of the irrevocable nature of same. Plaintiff and Defendants acknowledge that they have consulted with counsel of their own choosing before executing this Settlement Agreement.

20. **Counterparts**: This Agreement may be executed in multiple counterparts, each of which shall constitute an original, and all of which shall constitute one single Agreement. Faxed transmissions and/or copies of the signature block shall be deemed enforceable.

21. **Construction**. Plaintiff and Defendants have jointly participated in the negotiation of this Agreement and this Agreement is the product of joint draftsmanship by the Parties. In the event of an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if it was drafted jointly by the Parties and no presumptions or burdens of proof shall arise favoring any party by virtue of authorship of this Agreement.

22. **Headings**. The Parties agree that the headings used in this Agreement are for convenience and reference only and in no way define, describe, extend, or limit the scope or intent of this Agreement or the intent of any provision in it.

23. **Cooperation**. The Parties agree to cooperate fully in the execution of any documents or performance in any way which may be reasonably necessary to carry out the purposes of this Agreement and to effectuate the intent of the Parties hereto.

24. **Translation:** By signing this Agreement, Plaintiff certifies that this Agreement has been translated for him by an attorney and that he fully understands the terms of this Agreement. **TRADUCCIÓN: AL FIRMAR ESTE ACUERDO, EL DEMANDANTE CERTIFICA QUE ESTE ACUERDO HA SIDO TRADUCIDO PARA ÉL POR UN ABOGADO Y ELENTIENDE COMPLETAMENTE LOS TÉRMINOS DE ESTE ACUERDO.**

LUIS ENRIQUE CAMACHO HOPKINS

By:_____
LUIS ENRIQUE CAMACHO HOPKINS

_____  _____  _____  _____
LECH    MRMC    JTH     FJR

KING OF DIAMONDS MIAMI LLC

By: _____
Name:

/JF

Date: _____

Title: _Manager_

Date: _1-19-18_

**MISAEL RIGOBERTO MENOCAL CACERES**

By:_____
MISAEL RIGOBERTO MENOCAL CACERES
Date: _____

**MOVEMENT EVENTS LLC**

By:_____
Name: _Jeffrey Vasilas_
Title: _Manager_
Date: _1-19-18_

**JONNATAN TREVINO HERNANDEZ**

By:_____
JONNATAN TREVINO HERNANDEZ
Date: _____

**JEFFREY VASILAS**

By:_____
JEFFREY VASILAS
Date: _1-19-18_

**FRANCISCO J. ROBLETO**

By:_____
FRANCISCO J. ROBLETO
Date: _____

LECH   MRMC   JTH   FJR

JF